Next case is Chalumeau Power Systems v. Alcatel-Lucent Enterprise, Texas, United States. 2015-1191, Mr. Greenspoon. Good morning, your honors. May it please the court, I'd like to walk through the errors of fact, law, and judgment that burden each and every rationale used by the district court here to award attorneys fees finding the case exceptional. First, Alcatel, in their briefing, they say nothing, nothing, about the fundamental misperception by the district court that this case does not involve an argument that power travels over Ethernet, in power over Ethernet systems. Then there's the equally wrong belief, also not addressed by Alcatel, in their response to the briefing, that RJ45 circuitry could never make up part of an adapter. These are the first points made by the district court. They were wrong, and we don't see any briefing from Alcatel denying that they were wrong. Mr. Greenspoon, the trial court adopted the totality of circumstances approach and found on a variety of grounds that this case was frivolous. That's a pretty high standard to overcome. And, Your Honor, you're absolutely correct. Bad claim construction that the court said was the worst claim construction ever seen. Inadequate pre-suit investigation on a lot of grounds. That's right, Your Honor. We accept that burden, and we're here because we know that there's an abusive discretion burden as an appellant. And we are, if you will, we're setting them up and knocking them down because there's not a single one that when you scrutinize those rationales, they remain valid and viable. So, for example, those first two rationales used by the district court, no defense of them from Alcatel. And if you look at cases from this court, like Mullins v. Textron and Precision Links v. USA Products, when they were confronted by, if you will, a partial reversal of rationales for the exercise of discretion, they at least remanded. So, at least a remand is warranted in the context where the first two, if we count six rationales, are not being defended by the appellee. And let's keep going. The court says in its opinion that when Shalomo defended its infringement contentions, saying a thorough pre-filing investigation for each of the accused products and so on was separately charted, noticing this sentence did not contain a citation, I asked for documents supporting this claim. In response, Shalomo admitted that not every accused product family was bedded before filing the suit. How do you deal with that? Because the one that was named in the complaint had been bedded and charted pre-suit, and that was an error. That was a mistake by trial counsel to the district court. That was a misperception that was immediately corrected, and we show in our briefing there was a letter to the court that immediately corrected that misperception by trial counsel. What happened during the suit was when new product lines and new families of product were discovered, when interrogatory answers came in, where Alcatel acknowledged 46 different products within something like seven product families had the same standard capability.  So you're correct, Judge Wallach, to point out that there is a mistake. There's actually even a second mistake by trial counsel. And then the court goes through that and says, okay, there was in fact some semblance of a pre-suit investigation. But then it says, however, that was consistent with a meager effort Shalomo put forth in the rest of the suit. Those are words of the opinion, Judge. It's a characterization, though, that when you get underneath the characterization, you find that it's simply not sound. For example, in our – I can't remember which brief, but one of the briefs we pointed out, just from the docket sheet alone you can see that there is the usual amount of discovery being exchanged between the sides. That's not a patentee sitting on his hands. In reviewing today, I recognize that one of those types of discovery served by the patentee was a request for admission. Actually, two sets of requests for admission. You don't serve requests for admission unless you expect you're going to use them either to fend off summary judgment or to go to trial. So this was not a situation where the meager efforts characterization can really hold water. And I think the meager efforts characterization was also really tainted by this gross misperception by the district court, unexplainable, completely unfathomable, that this case did not involve a plaintiff patentee prepared to prove that power goes over Ethernet. The product, the standard is called power over Ethernet. It's just incomprehensible that that mistake existed in the district court's fee opinion, and frankly, that, I believe, infected all of the rest of the perceptions and characterizations by the district court. So there are two more plain construction positions that the district court hit on, and I'll set those up and knock them down. One is that an adapter has to be wireless. An adapter had to be an infrared or a wireless adapter for it to be considered a so-called, quote-unquote, adapter of a first type. Look at what the adapter really was in the preferred environment. I'm sure you can't see the yellow I just put on the board, but it's in the reply brief as well. I traced the signal path from the hub, which is 414, to the adapter of a first type, which is 602-1, and back into the network hub. What you know when you read the description associated with these electrical circuits is that item 602-1 never probes what would be in the empty space over here on the right side of the figure, the rest of that device. It never probes the rest of that device to decide, am I wireless or not? That's fundamental. Backing this up, look at the dependent claims, claims 9 and 10 and 11. Those depend from claim 8, which is the one at issue here, which has the word adapter. Claims 9 and 10 call it a wireline protocol, a wireline protocol involved in the claimed invention. Claim 11 is an alternative to claims 9 and 10, and it calls out a wireless protocol as a dependent claim from the independent claim. That means even more strongly than under principles of claim differentiation, both of those phenomena have to be possible, interpreted into the independent claim as possible, both wireline protocols for an adapter of a first type and wireless protocols for an adapter of a first type. The specification has more. At the beginning and at the end, there are descriptions in the patent specification which can only be read to show that the so-called desired device that's associated with the adapter of a first type is a wireline device, not a wireless device. The final issue on claim construction was separateness, this notion of separateness between the user interface connector and the network hub. And frankly, Your Honors, the recent PAPS licensing case puts to rest any notion that separateness was a preordained claim construction between the hub and the user interface connectors. When you dig deep into the arguments, the only ground for calling it frivolous for the patentee to send off a separateness construction was that the word coupled is between those two claim phenomena. So you have user interface connector coupled to the network hub. Well, Your Honors, you're very, very well familiar. Coupled is one of the most general terms that can be used in a patent claim. And it encompasses both attachments to things and very indirect communication with things that may be far away and not directly attached. It's a broad term. So the broad term coupled can't be used to impute a separateness requirement. And what we see from the PAPS licensing case is that even when the word is attached, the claim word is attached, even having that word in a claim doesn't mean permanently attached. It is excluded. So where does that leave the scorecard? It's that every ground of alleged frivolousness was simply wrong, some unfathomably wrong. And that leaves only the district court belief that Shalomow was insincere in its explanation for why it chose to dismiss. So Shalomow approached the court and said, we like to dismiss with prejudice because of changed circumstances. You allow them this new license defense, and that altered our perception of the economics of the case. The court's only rationale to attack that in the decision was to not believe it because supposedly that was inconsistent with a prior argument that the license defense was futile. Well, what all that misses is that things change because of the district court order allowing it in. There was absolutely nothing inconsistent. A pure error of judgment, unfair, illogical, simply does not follow. And with your honor's permission, I'd like to reserve the rest of my time. We'll do that, Mr. Greenspoon and Ms. Schifferman. I assume you're not going to rely on the chart? I'm sorry, your honor? You're not going to rely on the chart? Not specifically, no. Why don't we take the chart down? May I please the court, Lana Schifferman for Alcatel-Lucent. Counsel for Shalamud, asking this panel to second-guess Judge Andrews' decision. Judge Andrews' decision must be reviewed based on an abuse of discretion, and it should be given deference. Judge Andrews determined that Shalamud's positions on claim construction and infringement were frivolous, and that their positions and their conduct and their litigation conduct throughout were cause for an exceptional case. Asking fitness requires that we not look at the correctness of this position, but we look at the actual strength of the arguments that were presented to this court. We need to look at the actual arguments made. And as we review each of the many positions that counsel has argued, you will see that these positions were not actually made to the district court, and therefore the district court did not have the benefit of their position, and they cannot now rely on it to ask this court to reverse Judge Andrews' finding that this case was exceptional. I'm going to address each of the arguments that counsel made in turn. Counsel has argued that this case is based on a statement or a misstatement by Judge Andrews that there is no power traveling in a power over Ethernet device. That is absolutely not the case. What Judge Andrews indicated in his decision was that an RJ connector is not capable of receiving power. An RJ connector is simply a commonplace Ethernet plug and the port. Power travels through the connector to an adapter, which is capable of receiving and using power. Those are two distinct elements and described as distinct elements within the specification. In fact, the positions that Shalomu actually advocated to the court on claim construction for these two terms are consistent with the court's findings. Shalomu argued that an adapter was capable of receiving power and data. And for an RJ connector, in the form of a user interface connector, they said that that was a multi-pin connector through which power traveled. Through which. They also cite testimony by Alex Pell's witness. Again, consistent with the court's findings, power travels through the connector to a circuit, the circuit being the adapter. So the court's position on what this case was about was absolutely right. RJ45 adapter is not a term that is used anywhere in the patent. The patent does not describe any sort of modification to an RJ45 connector to turn it into adapter. Figure 6A that you saw just simply is a network hub on the left, and as described in the patent, an infrared adapter, which is an adapter of a first type, on the right. There is actually, if you look at the description and the references within that figure, no reference to an RJ45 connector. So it's implausible to argue that the figure 6A is actually some sort of modification to an RJ45 connector that turns it into an adapter when the figure doesn't even reference or describe the actual connector. And their preliminary infringement contentions, the only infringement contentions that they made throughout this case, are equally flawed. In their infringement contentions, Shalma says that an adapter, i.e. an RJ45 adapter, which again doesn't appear anywhere in the patent, is coupled to a connector, i.e. a port. So it argues that since you have to have a plug and a port, that's the only thing that's a connector, it argues that the adapter, the commonplace plug, that piece of plastic at the end of your Ethernet cable that you might have in your house, was an adapter capable of receiving power. And the judge found that position to be simply frivolous. There's no support for that in the specification, and Shalma has identified none. With respect to adapter of a first type, Shalma argues that adapter of a first type is an adapter of a particular type. And that's the construction that this court found, that the district court found to be one of the worst that it ever heard. Because an adapter of a particular type is effectively any kind of adapter. But the claim language here is adapter of a first type. So, the patent owner was specific of a first type. To call this any generic adapter, reads out the term of a first type. Now, Shalma argues that that's just the patent convention, that should be a term of relation. But relation to what? Claim 8 only has an adapter of a first type. And the specification uniformly teaches that the characteristics of an adapter of a first type are that it must be capable of receiving power. And that's consistent with the claim, identifying the presence of an adapter of a first type and for continuously providing power to that adapter. Therefore, an adapter of a first type must be capable of receiving power. And the specification says that the only adapters that can receive power are infrared adapters or other similar wireless adapters. And the argument that they make now, and the specification also teaches that other types of adapters, second type and third type, do not receive power. They're very clear on that. So, to make adapter of a first type a generic adapter, the claim would be nonsensical. Now, Shalma points to claim differentiation. First, that argument is vague. It would be internally contradictory. If adapter of a first type is not limited to an infrared or other wireless adapter, absolutely, the claim would be internally contradictory. It makes no sense because it would not be able to perform the later requirement of actually receiving power. And that's central to what this invention is really about. This is all about powering a remote device. And if you have here an adapter, and if it can't be receiving power, then there is no sense to this invention. The claim differentiation argument is similarly flawed. First of all, it's vague. Never made during the claims instruction process, never made to this court during the briefing on the fees. Claims 9, 10, and 11 refer to Ethernet, token ranks, and wireless LAN. These are not types of adapters. These refer to the operational protocol, which is another term within the specification and the claim. That talks about the form of communication. That does not refer to adapter. So claims 9, 10, and 11 are limiting and narrowing a different limitation and, therefore, do narrow the claim and are not inconsistent with the construction of adapter of a first type as provided by the court being an infrared or a wireless adapter. But what's important here is not even the correctness of the court's decision. As this court has found in SSA NEWEG, this is not the time to commit a de novo review of the claims instruction. Shalomu does not get a second bite at the apple. We are evaluating and measuring the actual positions that were litigated and the strength of those positions. And the only arguments that Shalomu made on this issue before the district court were, one, patent drafting convention and maybe an error that was made at the actual hearing with no support, no explanation, and then withdrawn and never made on appeal, and the specification supports it. But as we've discussed, there is no support in the specification. The last argument Shalomu made on this issue was with respect to other portions of the specifications, talking about desired devices. That is not an issue, again, that was argued before the court. Neither of those specifications, and in particular, they're pointing to the end of the patent in at column 13, lines 36 to 50, that talks about desired devices. The first time that that section of the patent was cited was to this court. Moreover, not only is it waived, it's wrong. That's simply talking about the right type of device. And the term desired devices is no better than particular. It's any device. And here in this portion of the specification, the court is simply talking about the right device in a particular circumstance. Here, adapter of a first type is a wireless adapter that can receive power. Next, Shalomu talked about user interface connector. Says that we need to look at the fact that the patent doesn't reference separately. But the patent, while it doesn't use the word, the figures and the text make clear that user interface connectors are in a particular location and are different than all the other kinds of connectors. And in fact, when the patent owner wanted to show that things were included, it said that the hub includes hub user connectors and uplink connectors. But with respect to the user interface connector, no such statement was made. And every reference to it, including figures, for example, figure 2, shows that it is something separate from the network hub and the hub user connectors, the uplink connectors. And there's no support showing that they can be interchangeable, which is exactly what Shalomu argued. They essentially want to read out, again, the words of the claim. They want that claim term to be connector. And that's because they have an infringement argument that rides on it. But the term is user interface connector, and the patent is clear that it has particular definitions. Now I'm going to move on to the overall litigation misconduct. Shalomu filed this case at the end of a series of cases. This was one of the last. It demanded a nuisance settlement, and then acted in accordance with that demand to try to drive a clause. The only thing that they point to here is they served some document requests. They made us defend depositions. But we need to look at the actual substance behind their request. The fact that they opposed a motion to dismiss a French entity when in a- They say they asked for a request for admissions, too. They asked for a request for admissions. They served interrogatories. It doesn't take a lot to draft requests for admissions interrogatories. What is hard and what takes time, effort, and expense is actually responding to that discovery. And that's what they forced us to do. They served, as they say, five sets of RFPs. We had to produce voluminous amounts of documents, expense. And they don't even have an expert that was able to review the confidential documents until the very end of that discovery. On the deposition front, they hid behind their entities. We deposed Acacia. They said, oh, Shalomu knows, and Acacia is Shalomu's parent. We deposed Shalomu, and they said, oh, no, Acacia knows, even though the witness was an Acacia employee. This was all really the same company. They hid behind their forms. They made us serve third-party discovery on the licenses. So, overall, they acted in a way to string out this case, hoping to incur the expense and force Alcatel to settle just so that they can get a nuisance settlement. And when they were unable to do that, on the eve of expert discovery, after opposing the licensed defense as futile, they dismissed. The last issue I want to cover is the voluntary dismissal. First of all, Shalomu is not the prevailing party here. Alcatel-Lucent prevailed in this case, and the pragmatic decision of this court showed that. There is a voluntary dismissal with prejudice that has necessarily included within it a covenant not to sue. And that is determinative. It covered all claims, nothing less. And with respect to the voluntary dismissal precluding fees, Shalomu is asking essentially for a get-out-of-jail-free card. If they dismiss after... Well, they sought that agreement and didn't obtain it, correct? I'm sorry, Your Honor? Didn't they seek that agreement as part of their initial attempt to negotiate a dismissal with you, that you not seek fees and you refused? They did. We refused, and the judge instructed us that we could seek fees. But they're seeking a get-out-of-jail-free card to excuse all that came before it. That's not the law. Thank you, Your Honor. Thank you, Ms. Schiffman. Mr. Greenspoon has five minutes to rebut. Yes, thank you, Judge. Now, I'm not here to argue that Shalomu was right and we need to overturn claims instruction. But you do need to tell us where these arguments were raised below. That's right. That's right. In each case, the arguments were raised below. In fact, the briefing is at... Shalomu's opposition to the Section 285 motion is A2454. 2454. That's right. And I didn't hear that there's only one specific issue where I heard from Ms. Schiffman that there is no mention of it in the trial court. And I think that was the... No, there were at least two. Okay. Well, there was this specification excerpt. In any case, where I'm going with that is whatever they were, we're following the rule laid down in Interactive Gift, which says we had an argument in the trial court. And on appeal, of course, we have some latitude for pointing to places that support the same argument. Whoa. Show me where you've raised the specific issues in the record, because I'm looking at 2454. There's a defense of the adapter of the first type not having to be wireless, and it should be construed as particular. On 2456, Shalomu's claims instructions were not frivolous. 2457, with respect to adapter of a first type, Shalomu's proposed construction was not divorced from the specification or inconsistent with the prosecution history. And that's it. The figure 6A of the patent is discussed, where 6A has the adapter of the first type. That's on the next page, 58. So what it comes down to is Shalomu, of course, during claim construction proceedings advocated for its claim instructions. That was undoubtedly true. If I may, I have very little time left. What makes the difference between adapter of the first type and adapter of the second type is that the adapter of the first type sends back that signal that says, I'm capable of receiving power. And if you look at the claim as a whole. If you're not going to adequately answer my question about where those arguments were raised below, you're going to lose on that waiver issue. You can go to – Your Honor, absolutely, in the district court, I can take some time to point to the pages, but I know we have very little time here. In that briefing, there is a defense of the non-frivolity of all the claim construction proceedings. Well, yeah. Okay. And if that's sufficient, you would probably prevail on that, if that was sufficient. Thank you, Your Honor. But, of course, back to what is frivolous claim construction. This court in Kew Pharma set that out. This court in Ilor cited back to Kew Pharma. What makes the claim construction position frivolous is that it doesn't follow standard canons of claim construction and it doesn't reasonably rely on the intrinsic record. And in this case, if you go back to the claim construction briefing, which is absolutely in the record, and all of the discussion of the claim construction in defense of its non-frivolity in the fee briefing, you'll see that those frameworks are followed. Finally, what we heard from Ms. Shifferman on the separateness issue is you heard her talk about places in the specification where the user interface connector happens to be in the preferred embodiment example separate from the network hub. In fact, it's their case which shows that that's not a ground for finding that separateness is a requirement.  a case cited in the network hub, which is cited by Alcatel, which indicates that figures and statements in the spec in the specification are not by themselves enough to show separateness. It was specifically on an issue of separateness. Finally, litigation misconduct was not an issue accepted by the district court. In fact, I would like to cite Parsi v. Hassan, which is 778 F3rd 116. That's a case which stands for the proposition that when you have an equitable decision by the district court with a plurality of rationales, you can't rely on the normal alternative grounds for affirmance rules. When you say litigation misconduct was not accepted by the district court, the court says, Chalamot filed a frivolous lawsuit with the sole purpose of extorting a settlement fee. When it realized that was not going to happen, it dropped the case. Chalamot's entire litigation strategy was devoted to stringing out the case in the hopes that Alcatel would incur fees while Chalamot would not. How is that not litigation misconduct? It's not technically what this court has called litigation misconduct. It's certainly offensive, and those are caustic characterizations. I don't deny that. But litigation misconduct in the context of fee awards is activities by the offensive party which specifically cause an increase in cost to the other side. Well, let me restate that. Strategy was devoted to stringing out the case in the hopes that Alcatel would incur fees. Didn't you just describe that? Your Honor, that's a gloss and a characterization, but it's not a finding that a specific activity constitutes litigation misconduct. And I thank you for your time, Your Honor. If there are no further questions. Thank you, Mr. Greenspan. We will take the case under review.